**DELAWARE TOOL STEEL CORPORATION, a Delaware corporation, Plaintiff,**

**v.**

**BRUNNER & LAY, Inc., a Delaware corporation, Chicago Brunner & Lay Rock Bit Corp., a Delaware corporation, Brunner & Lay Rock Bit of Asheville, Inc., a Delaware corporation, Brunner & Lay Rock Bit of Philadelphia, Inc., a Delaware corporation, Defendants.**

**Civ. A. Nos. 1799–1802.**

United States District Court
D. Delaware.

July 6, 1956.

John S. Walker and Frank J. Miller, Wilmington, Del., for plaintiff.

Hugh M. Morris and Andrew B. Kirkpatrick, Jr., Morris, Steel, Nichols & Arsht, Wilmington, Del., and Hyman Zuckerman, Philadelphia, Pa., for defendants.

LEAHY, Chief Judge.

This matter arises from plaintiff's objections to certain of defendants' interrogatories. Plaintiff brings suit under § 3 of the Robinson-Patman Act; §§ 4 and 16 of the Clayton Act; and § 2(a) of the Clayton Act, as amended. 15 U.S.C.A. §§ 13a, 15, 26, 13(a).

Plaintiff and defendants are competitors in the business of manufacturing and selling paving breaker accessory tools. Plaintiff alleges during the period from about June 30, 1955, defendants have sold, contracted to sell, and offered to sell to certain of its purchasers paving breaker accessory tools at special discounts and guarantees greater than their (and plaintiff's) published maximum discounts for like goods. It is also alleged the special discounts and guarantees of defendants are given only to such of their purchasers as are purchasers or buyers from plaintiff or to whom plaintiff has offered to sell its paving breaker accessory tools. Defendants, it is alleged, thereby knowingly discriminate

in price between their different purchasers of like grade, quantity, and quality with the intent to destroy competition and eliminate one or more competitors. It is further alleged prior to June 30, 1955, plaintiff was enjoying a substantial, profitable and expanding business, but as a result of the foregoing, has been deprived of the business and profits which it would have had on sales already made, on existing orders, on anticipated new orders from old customers of plaintiff, and on anticipated new orders from new customers. Plaintiff seeks treble damages under statute and temporary and permanent injunctions.

Defendants' Interrogatories to plaintiff, objected to by plaintiff, follow:

"(5) Was either Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, or Brunner & Lay, Inc., an Illinois corporation, or were both engaged in the manufacture of paving breaker accessory tools when plaintiff began the manufacture and sale of such tools?

"(a) Was either the said Brunner & Lay Rock Bit Corp., or the said Brunner & Lay, Inc., or were both engaged in the sale of paving breaker accessory tools when plaintiff began the manufacture and sale of such tools?

"(b) Did plaintiff begin its sales in any territory in which sales of such tools were then being made and sold by said Brunner & Lay Rock Bit Corp., or by said Brunner & Lay, Inc., or by both?

"(c) Were the paving breaker accessory tools made and sold by Brunner & Lay Rock Bit Corp., or by Brunner & Lay, Inc., of the same grade and quality at all times as those now made and sold by plaintiff?"

"(6) Were the paving breaker accessory tools manufactured and sold by plaintiff prior to June 30, 1955 of like grade and quality as those manufactured and sold by Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, and Brunner & Lay, Inc., an Illinois corporation, during the period from the beginning of plaintiff's manufacture and sale of such tools to about June 30, 1955?"

"(7) Did plaintiff at any time prior to June 30, 1955 seek to sell any of the paving breaker accessory tools manufactured by it to any purchaser or purchasers of such tools of like grade and quality manufactured and sold by Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, or Brunner & Lay, Inc., an Illinois corporation, either or both?"

"(8) What were the inducements by way of list price discounts, rebates or guarantees that plaintiff offered or allowed to the purchasers of the paving breaker accessory tools of Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, and Brunner & Lay, Inc., an Illinois corporation, to have such purchasers buy like tools made and sold by plaintiff?"

"(9) Does the answer to the preceding interrogatory (8) include the only list prices, discounts, (cash or otherwise), rebates and guarantees offered or allowed by plaintiff to such customers of Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, and Brunner & Lay, Inc., an Illinois corporation, either or both?

"(a) What quantity discounts had plaintiff offered the customers of Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, and Brunner & Lay, Inc., an Illinois corporation, at any time prior to June 30, 1955?

"(b) What quantity discounts had plaintiff allowed prior to June 30, 1955 to any customer or customers of either Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, or Brunner & Lay, Inc., an Illinois corporation?

"(c) What cash discounts had plaintiff allowed to any prior customer or customers of either Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, or Brunner & Lay, Inc., an Illinois corporation?

"(d) What year-end rebates and bonuses, or either, did plaintiff offer prior

to June 30, 1955 to any customer or customers of Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, or Brunner & Lay, Inc., an Illinois corporation?

"(e) What year-end rebates and bonuses, or either, did plaintiff allow, or pay, at any time to any customer or customers of Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, or Brunner & Lay, Inc., an Illinois corporation?"

"(10) To what customers of Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, or Brunner & Lay, Inc., an Illinois corporation, or either of them, did plaintiff offer such discounts, rebates and guarantees at any time prior to June 30, 1955?

"(a) What was the list price as to which plaintiff made such offers?

"(b) To what customers of Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, or Brunner & Lay, Inc., an Illinois corporation, or either of them, did plaintiff allow or pay such discounts, rebates and bonuses or make such guarantees prior to June 30, 1955?

"(c) Have plaintiff's discounts, rebates, guarantees and bonuses been the same at all times since June 30, 1955 as before?

"(d) Have there been any exceptions with respect to the amount of plaintiff's discounts, rebates or bonuses, or with respect to the character or extent of its guarantees?"

"(22) From whom did each purchaser referred to in interrogatories (20) and (21) purchase paving breaker accessory tools prior to sales to it of such tools by plaintiff?"

"(24) What advantage to plaintiff has its terms of sale, including its discounts (quantity, cash or otherwise), its rebates and year-end bonuses had in its competition with other manufacturers (including Brunner & Lay Rock Bit Corp., a Pennsylvania corporation, Brunner & Lay, Inc., an Illinois corporation, and defendant), of paving breaker accessory tools of like grade and quality?"

"(25) Does plaintiff claim that all of its acts in the sale of the paving breaker accessory tools have been lawful?"

1. Defendants assert Interrogatories (5) through (10), and (24) are aimed at determining whether any damage, any lessening of competition has resulted; Interrogatory (22), for the purpose of ascertaining the defense indicated in Standard Oil Company v. Federal Trade Commission, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239; and Interrogatory (25), for the purpose of determining the defense of unclean hands. Plaintiff objects mainly on the ground of relevancy.

2. The difficulty in this case, as in most cases involving competition, is the necessity of fixing a pattern of activity and reference through limitation without the undesirability of having a jury sit *in vacuo*. What is pertinent here is the specific violations, as alleged, and their effect on competition. I see no relevance of relationships between plaintiff and the activities of defendants' predecessor Pennsylvania and Illinois corporations; the status of plaintiff's business years before the alleged violations would needlessly widen the scope of the issues under the guise of narrowing them.

I therefore find:

As to Interrogatory (5) (a) and (b), plaintiff's objection is sustained.

As to Interrogatories (5) (c) and (6), plaintiff's objection is sustained but interrogatories may be submitted with reference to the time of alleged violations.

As to Interrogatories (7) and (8), plaintiff's objection is sustained, but interrogatories may be submitted with reference to the time of alleged violations and only such purchasers involved in alleged violations.

Consequently, as to Interrogatory (9) (a), (b), (c), (d), (e), plaintiff's objection is overruled, subject to the above qualifications.

As to Interrogatories (10) (a), (b), (c), (d), and (22), plaintiff's objection is sustained, but interrogatories may be submitted with reference to the time of alleged violations and only such purchasers involved in alleged violations.

As to Interrogatory (24), plaintiff's objection is sustained for lack of specificity.

Interrogatory (25) appears irrelevant in the light of numerous decisions following Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U. S. 211, 71 S.Ct. 259, 95 L.Ed. 219, removing the doctrine of unclean hands from the path of a greater public policy encouraging prosecutions of violations. Judge Forman has had a most recent discussion on this point in Vanity Fair Mills v. Cusick, D.C., 143 F.Supp. 452.